UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PC DRIVERS HEADQUARTERS, LP,<br><br>Plaintiff,<br><br>v.<br><br>MALWAREBYTES INC.,<br><br>Defendant. | Case No. 5:18-cv-05409-EJD<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>Re: Dkt. No. 61 |

## I. INTRODUCTION

In this action Plaintiff PC Drivers Headquarters, LP ("PC Drivers") alleges that Malwarebytes, Inc. ("Malwarebytes") wrongfully categorized PC Drivers' software as malware or a "Potentially Unwanted Program" ("PUP"). PC Drivers asserts claims under the Lanham (Trademark) Act, 15 U.S.C. § 1501, as well as claims for business disparagement, tortious interference with contractual relations, negligence and gross negligence, unfair competition, promissory estoppel, and declaratory relief. PC Drivers filed suit in the Western District of Texas. The Texas court denied PC Drivers' motions for a temporary restraining order and preliminary injunction and transferred the action to this court pursuant to 28 U.S.C. section 1404(a).

Malwarebytes moves to dismiss the Complaint, asserting among other things that it is entitled to immunity under section 230(c)(2)(B) of the Communications Decency Act of 1996 ("CDA"), 47 U.S.C. § 230. The court finds it appropriate to take Malwarebytes' motion to dismiss under submission for decision without oral argument pursuant to Civil Local Rule 7-1(b). For the reasons set forth below, Malwarebytes' motion will be granted with leave to amend.

## II. BACKGROUND[1]

Plaintiff PC Drivers provides technical support using a software-first approach to fix the most common computer issues consumers face. Comp. ¶ 7. PC Drivers' services include "locating and installing all missing and outdated software drivers and working in real time in the background of the operating system to optimize processing." *Id.* PC Drivers uses internet search and display marketing techniques. *Id.* ¶ 8. Consumers responding to advertisements are encouraged to download and install PC Drivers' software. *Id.* The only way to obtain PC Drivers' DRIVER SUPPORT, ACTIVE OPTIMIZATION and DRIVER DETECTIVE products (collectively "Products") is by searching and clicking on an internet advertisement, installing the software on the consumer's device, and then purchasing a license. *Id.* PC Drivers offers its Products under its federally registered trademarks, a common law mark and a design mark (collectively "Marks"). *Id.* ¶ 11.

Defendant Malwarebytes is a software company that sells malware detection software designed to scan consumer's computers and to report to consumers in commercial advertisements or promotions any threats, PUPs, malware and viruses for de-installation. *Id.* ¶ 13. Malwarebytes gains customers by offering a free version of its software and upselling premium versions for purchase after scanning. *Id.* "Once the free version is downloaded and installed and the consumer scans his computer, Malwarebytes promotes its premium versions by allegedly identifying and quarantining alleged PUP and malware and their official websites." *Id.* When the free version of Malwarebytes software is downloaded and installed, a user who searches for DRIVER SUPPORT or ACTIVE OPTIMIZATION will find PC Drivers' ads or website links bearing the Marks, but if the user clicks on the links, the user is redirected to Malwarebytes' website to purchase Malwarebytes' product. *Id.* ¶ 22.[2] Thus, Malwarebytes is allegedly profiting from PC Drivers'

---

[1] The Background is a summary of the allegations in the Complaint that are relevant to the issues raised in the motion to dismiss.

[2] Malwarebytes requests judicial notice of a screenshot the Malwarebytes' website referred to in the Complaint as well as other materials. Dkt. No. 61. PC Drivers also refers to and relies on these materials in its Opposition brief. *See* Opposition at 10. Malwarebytes' request is granted. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001) (taking judicial notice of

Marks and "stealing market share through click redirection." *Id.* ¶¶ 22-23.

In October of 2016, Malwarebytes categorized all builds and releases of PC Drivers' DRIVER SUPPORT and DRIVER DETECTIVE software with a negative PUP rating and a security risk to Malwarebytes' customers. *Id.* ¶ 14. PC Drivers customers who received Malwarebytes' warnings were allegedly deceived into removing PC Drivers' software. *Id.* Upon learning about the negative categorization and warnings, PC Drivers contacted Malwarebytes and provided the company with information regarding PC Drivers' compliance with industry leading standards and requirements, including the Clean Software Alliance ("CSA") Guidelines, Microsoft and Google's standards and other anti-malware vendor certifications by McAfee and Symantec. *Id.* Malwarebytes refused to delist the negative PUP rating for PC Drivers' software and referred PC Drivers to AppEsteem for third party certification. *Id.* Malwarebytes "proffered that if AppEsteem gave its approval seal to PC Drivers' software, then Malwarebytes would reconsider delisting that software as PUPs." *Id.* ¶ 16. AppEsteem conducted tests and issued a "clean software certification" for the current and prior builds of PC Drivers' software. *Id.* ¶ 17. PC Drivers informed Malwarebytes of the certification and Malwarebytes delisted PC Drivers' Products. *Id.*

PC Drivers later learned that Malwarebytes had relisted the Products as PUPs and had barred customers' access to PC Drivers' official websites. *Id.* ¶ 18. By letter dated February 1, 2018, PC Drivers demanded that Malwarebytes remedy the situation. *Id.* ¶ 19. PC Drivers did not receive a formal response. *Id.*

PC Drivers also learned that a Malwarebytes staff member posted "Removal instructions for Driver Support" on Malwarebytes' message board forum. The post, which shows a screen shot of PC Drivers' system optimizer containing PC Drivers' Marks, includes allegedly false and misleading comments about PC Drivers' Products and advises consumers that the best way to

---

documents on which the complaint "necessarily relies"); *see also In re Facebook PPC Advert. Litig.*, No. 5:09-cv-03043-JF, 2010 WL 5174021, at *4 (N.D. Cal. Dec. 15, 2010) (considering screenshots of defendant Facebook's interface, referenced in complaint, in granting Facebook's motion to dismiss).

Case No.: 5:18-cv-05409-EJD
ORDER GRANTING MOTION TO DISMISS

3

uninstall DRIVER SUPPORT is to use Malwarebytes' software. *Id*. ¶¶ 20, 23. PC Drivers found another Internet site, www.botcrawl.com, with a post by a person named Sean Doyle that contained similar comments about DRIVER SPPORT and instructions for removal. *Id*. ¶ 21. PC Drivers alleges on information and belief that Sean Doyle receives monetary or in-kind benefits from Malwarebytes for each sales lead or software download generated from his post. *Id*.

PC Drivers alleges that Malwarebytes' alleged conduct above has resulted in trademark misappropriation and infringement, dilution of PC Drivers' Marks, confusion among PC Drivers' customers and potential customers, and diminution in the value of PC Drivers as a going concern. *Id*. ¶¶ 22-27.

**III.    STANDARDS**

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). The factual allegations in the complaint "must be enough to raise a right to relief above the speculative level" such that the claim "is plausible on its face." *Id*. at 556-57. A complaint that falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

When deciding whether to grant a motion to dismiss, the court must generally accept as true all "well-pleaded factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). The court must also construe the alleged facts in the light most favorable to the plaintiff. *See Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014) (providing the court must "draw all reasonable inferences in favor of the nonmoving party" for a Rule 12(b)(6) motion). However, "courts are not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678.

Also, the court usually does not consider any material beyond the pleadings for a Rule

12(b)(6) analysis. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1989). Exceptions to this rule include material submitted as part of the complaint or relied upon in the complaint, and material subject to judicial notice. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688-69 (9th Cir. 2001); *see also Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1127 (9th Cir. 2002) ("documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss").

## IV. DISCUSSION

Malwarebytes' motion to dismiss raises the following issues: (1) whether section 230(c)(2)(B) of the CDA immunizes Malwarebytes from the false advertising and common law claim, and if not, whether PC Drivers alleges sufficient facts to support a plausible claim; (2) whether PC Drivers has alleged sufficient facts showing that its Marks are famous to support a claim for trademark dilution claim under 15 U.S.C. section 1125(c); and (3) whether PC Drivers has alleged facts showing that consumers are confused as to the source of goods by Malwarebytes' alleged use of PC Drivers' Marks to support a claim for trademark infringement under 15 U.S.C. section 1114.

### A. Statutory Immunity For Non-Trademark Claims (Counts 1, IV-X)

Malwarebytes contends that the safe harbor provision of the CDA provides immunity from all of the non-trademark claims.[3] The statute provides, in relevant part:

> (c) Protection for "Good Samaritan" blocking and screening of offensive material. . .
>
> (2) Civil liability
>
> No provider or user of an interactive computer service shall be held liable on account of. . .

---

[3] The statutory immunity in the CDA does not apply to intellectual property claims. 47 U.S.C. § 230(e)(2) ("Nothing in this section shall be construed to limit or expand any law pertaining to intellectual property.").

Case No.: 5:18-cv-05409-EJD
ORDER GRANTING MOTION TO DISMISS
5

> (B) any action taken to enable or make available to information content providers or others the technical means to restrict access to material described in paragraph (1).

47 U.S.C. § 230(c)(2)(B). The material that can be blocked under section 230(c)(2)(B) includes "material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable, whether or not such material is constitutionally protected[.]" *Id*. § 230(c)(2)(A). The statute defines "interactive computer service" to mean "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions." *Id*. § 230(f)(2). The statute defines "access software provider" to mean "a provider of software (including client or server software), or enabling tools that do any one or more of the following: (A) filter, screen, allow, or disallow content; (B) pick, choose, analyze, or digest content; or (C) transmit, receive, display, forward, cache, search, subset, organize, reorganize, or translate content." *Id*. § 230(f)(4)(A)-(C). "Thus, a provider of software or enabling tools that filter, screen, allow, or disallow content that the provider or user considers obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable may not be held liable for any action taken to make available the technical means to restrict access to that material, so long as the provider enables access by multiple users to a computer server." *Zango, Inc. v. Kaspersky Lab, Inc.*, 568 F.3d 1169, 1173 (9th Cir. 2009). Congress enacted these provisions "to encourage the development of technologies which maximize user control over what information is received by individuals, families, and schools who use the Internet," and to "remove disincentives for the development and utilization of blocking and filtering technologies." 47 U.S.C. § 230(b)(3), (4). Section 230 immunity applies to business torts. *Id*. at 1177 (citing *Perfect 10, Inc. v. CCBill, LLC*, 488 F.3d 1102, 1108, 1118-19 (9th Cir. 2007) (holding that CDA §230 immunity applies to state unfair competition and false advertising actions)).

Malwarebytes asserts that it is both a user and provider of an interactive computer service ("ICS") and that it provides the technical means to restrict access to material that Malwarebytes or

Case No.: 5:18-cv-05409-EJD
ORDER GRANTING MOTION TO DISMISS

6

its users consider objectionable. As such, Malwarebytes argues that it satisfies the statutory requirements for immunity and PC Drivers cannot plead around the immunity.

PC Drivers raises four arguments in response. First, PC Drivers contends that the Complaint raises factual issues that preclude a ruling on whether Malwarebytes is immune from suit. In particular, PC Drivers contends that the viability of its claims cannot be resolved on a Rule 12(b)(6) motion to dismiss because of factual issues regarding (a) Malwarebytes' alleged misappropriation of page clicks from paid-for advertising and (b) publication of false and misleading statements about PC Drivers' Products. PC Drivers' Opp'n. at 6-7 (Dkt. No. 62 at 10-11). PC Drivers' argument might have force at the summary judgment stage, but at the motion to dismiss stage, PC Drivers' factual allegations are accepted as true. *See Ashcroft v. Iqbal*, 556 U.S. at 664. Moreover, several courts have resolved the applicability of CDA section 230(c)(2)(B) immunity at the pleading stage. *See, e.g., Holomaxx Techs. Corp. v. Microsoft Corp.*, No. 10-4924 JF, 2011 WL 3740813, at *3 (N.D. Cal. Aug. 23, 2011) (dismissing claims under Rule 12(b)(6) based on Section 230(c)(2) immunity); *Enigma Software Grp.*, No. 17-2915 EJD, 2017 WL 5153698, at *3 (N.D. Cal. Nov. 7, 2017) (same); *see also e360Insight, LLC v. Comcast Corp.*, 546 F. Supp. 2d 605, 609 (N.D. Ill. 2008) (granting judgment on the pleadings based on section 230(c)(2) immunity).

Second, PC Drivers contends that Malwarebytes is not entitled to blanket immunity from all tortious conduct. Specifically, PC Drivers contends that section 230(c)(2) immunity does not shield Malwarebytes from liability for "stealing" click advertising services paid for by PC Drivers and making false and disparaging statements about PC Drivers' Products. Dkt. No. 62 at 12. PC Drivers contends that these actions are "not actions attendant to enabling or making available the technical means to restrict access to material," and therefore are not shielded by section 230(c)(2). *Id*.

The alleged theft of click advertising services is described in the Complaint as follows:

> Malwarebytes is also profiting from the use of PC Drivers' Marks
> through by [sic] using the MALWAREBYTES free version product
> to redirect clicks from the PC Drivers website to the Malwarebytes

Case No.: 5:18-cv-05409-EJD
ORDER GRANTING MOTION TO DISMISS

7

> website. When a Malwarebytes free version software user opens a
> search engine in his own web browser and searches for DRIVER
> SUPPORT or ACTIVE OPTIMIZATION, PC Drivers' ads or
> website links bearing the Marks will prominently appear in the
> search engine results. However, instead of going directly to PC
> Drivers' official website when clicking these links, it redirects
> consumers to the Malwarebytes website for the purpose of executing
> a Malwarebytes sale. The result is that Malwarebytes obtains the
> benefits of a potential paying customer based on the acquisition
> costs paid by PC Drivers.

Compl. ¶ 22. These allegations describe conduct that falls within the scope of the statutory protection afforded by the CDA. The statutory protection is broad, applying to "any action." 47 U.S.C. § 230(c)(2)(B). The phrase "any action" has only one qualifier for the immunity to apply: that the "action" is "taken to enable or make available to information content providers or others the technical means to restrict access to material." *Id*. The alleged redirection in this case clearly is an action that enables or makes available the technical means to restrict access to material. The Complaint essentially alleges that Malwarebytes' software filters website domains for programs associated with PUPs. Compl. ¶ 22. Malwarebytes performs this filtering when a user who has installed Malwarebytes' software navigates to driversupport.com or a PC Drivers advertisement. Dkt. No. 61-4. Malwarebytes identifies the domain driversupport.com as associated with a PUP and then directs the user to a Malwarebytes' page. Dkt. No. 61-5, 61-6. This page notifies the user that Malwarebytes blocked driversupport.com "due to PUP." *Id.* It also informers the user: "Learn about PUP. If you don't want to block this website, you can exclude it from website protection by accessing Exclusions." *Id*. Far from falling outside the scope of CDA immunity, this filtering is a type of "action" that enables or makes available to others the "technical means" to restrict access to statutorily defined objectionable material. The statute does not contain qualifiers, conditions, or exceptions for "actions" that have the secondary effect of depriving PC Drivers of the benefits of the page-click advertising it purchased from a third party. Applying the plain language of section 230(c)(2)(B), Malwarebytes is entitled to immunity for the alleged classification of PC Drivers' software as a PUP and the redirection.

The allegedly false and disparaging statements are found in a Malwarebytes' online forum post and consist of Malwarebytes' explanation for the basis of its classification of Driver Support

Case No.: 5:18-cv-05409-EJD
ORDER GRANTING MOTION TO DISMISS
8

as a PUP as follows:

> Malwarebytes has determined that Driver Support is a "system optimizer." These so-called "system optimizers" use intentional false positives to convince users that their systems have problems. Then they try to sell you their software, claiming it would remove these problems.

Compl., Ex. 1. The post also includes a series of screenshots to show users what they would see if Driver Support was installed on their computer and instructions for downloading Malwarebytes and removing Driver Support. *Id*.

Malwarebytes' stated basis for classifying Driver Support as a PUP is not necessarily an "action taken to enable or make available" the technical means to restrict access to objectionable material. It is an explanation provided in Malwarebytes' forum for why Malwarebytes provides the technical means—filtering software—to restrict Driver Support from users; Malwarebytes' stated explanation does not necessarily "enable or make available" that filtering software. PC Drivers also alleges that Malwarebytes' explanation is false and disparaging and made with malice, reckless disregard for the truth, ill will and with the intent to interfere with PC Drivers' economic interest. Compl. ¶ 57. Accepting these allegations as true and drawing all reasonable inferences in favor of PC Drivers, it is premature at the pleading stage to make a definitive ruling on the applicability of the statutory immunity to Malwarebytes' allegedly false and disparaging statement in the forum post. Whether the alleged false and disparaging statement is sufficient to state a claim is addressed separately in the next section of this Order.

In contrast, the screenshots and instructions for removing Driver Support are "actions" taken to "make available. . . the technical means to restrict access to" objectionable material. 47 U.S.C. § 230(c)(2)(B). Malwarebytes' filtering software is the "the technical means to restrict access" to objectional material. Providing instructions for the installation and use of the filtering software is an integral part of making the filtering software available to others. Therefore, Malwarebytes is immune from liability for providing the screenshots and instructions. *Id*.

Third, PC Drivers contends that Malwarebytes' conduct goes "beyond" merely enabling and making available to others the technical means to restrict access to material. PC Drivers'

Case No.: 5:18-cv-05409-EJD
ORDER GRANTING MOTION TO DISMISS
9

Opp'n. at 9. Specifically, PC Drivers contends that Malwarebytes blocks access to PC Drivers' website even for customers who have already paid for a PC Drivers' subscription; and discourages users from using PC Drivers' Products by prompting users to finalize quarantine of all PUPs with one click instead of allowing users to readily deselect individual webpages from quarantine. *Id*. at 9-10. PC Drivers also contends that Malwarebytes requires PC Drivers' customers "to individually identify and de-list each iteration of PC Drivers' website and undergo a complicated process of identifying and individually excepting up to 139 separately identified folders in order to maintain the product on the device." *Id*. at 16. According to PC Drivers, Malwarebytes' actions constitute tortious interference with contractual relations. Compl. ¶¶ 59-61.[4]

The Ninth Circuit has already rejected a substantially similar argument. In *Zango*, the parties disputed whether users of defendant Kaspersky Lab's "blocking" software could override its screening. *Zango*, 568 F.3d at 1171. The plaintiff, Zango, alleged that even though Kaspersky's program offered users the option to "skip" the warning, the "skip" option did not work and Zango's users were "forced to deal with constant warnings." *Id*. Zango also alleged that users running Kaspersky's program who wanted to download Zango's software could not "override" Kaspersky's block. *Id*. at 1171-72. The Ninth Circuit analyzed section 230 immunity as follows:

> By providing its anti-malware software and malware definition update services, Kaspersky both enables and makes available the technical means to restrict access to malware. Users choose to purchase, install, and utilize the Kaspersky software. Regardless of whether Zango is correct in its allegation that Kaspersky does not provide users of Kaspersky products a choice to override the security software and download and use Zango, there is no question that Kaspersky has "made available" for its users the technical means to restrict access to items that Kaspersky has defined as malware. Therefore, Kaspersky satisfies the requirements of subsection (B) so long as the blocked items are objectionable material under § 230(c)(2)(A).

---

[4] PC Drivers' third argument is also predicated on Malwarebytes' alleged theft of click advertising services and false and disparaging statements about PC Drivers' Products. For reasons previously discussed in the context of PC Drivers' second argument, Malwarebytes is statutorily immune from liability for the alleged theft of click advertising services.

Case No.: 5:18-cv-05409-EJD
ORDER GRANTING MOTION TO DISMISS
10

*Id*. at 1176. The Ninth Circuit observed that "[i]f a Kaspersky user (who has bought and installed Kaspersky's software to block malware) is unhappy with the Kaspersky software's performance, he can uninstall Kaspersky and buy blocking software from another company that is less restrictive or more compatible with the user's needs. Recourse to competition is consistent with the statute's express policy of relying on the market for the development of interactive computer services. § 230(b)(1), (2)." *Id*. at 1177. Consistent with *Zango*, the statutory immunity applies to Malwarebytes' program regardless of whether PC Drivers subscribers are forced to choose between quarantining all or none of the listed PUPs and are unable to override Malwarebytes' block. If a PC Drivers' subscriber finds Malwarebytes' software too cumbersome, the subscriber can uninstall Malwarebytes.

Fourth, PC Drivers contends that the statutory immunity does not apply because Driver Support is not "objectionable" and Malwarebytes "has not actually determined that PC Drivers is objectionable." PC Drivers' Opp'n. at 12. According to PC Drivers, Malwarebytes' proffered reasons for labelling Driver Support as objectionable are "either so general as to be meaningless or untrue" and that "no legitimate players within the anti-virus community" have given a negative label to Driver Support. *Id*. PC Drivers also relies on the AppEsteem certification as evidence that Driver Support "cannot be reasonably construed as being objectionable." *Id*. PC Drivers also theorizes that Malwarebytes is using Driver Support as a "bogeyman to sell its product and to steal advertising dollars." *Id*. at 13. In other words, Malwarebytes is allegedly using Driver Support as a "subterfuge" to steal PC Drivers' click advertising services. *Id*. PC Drivers cites to the concurring opinion in *Zango* and argues that Malwarebytes is "abusing [section 230(c)(2)] immunity to block content for anticompetitive purposes or merely at its malicious whim, under the cover of considering such material 'otherwise objectionable.'" *Id*. at 14.

PC Drivers' fourth argument is unpersuasive for two reasons. First, the plain language of section 230 grants providers and users of filtering software discretion to determine what is "otherwise objectionable" content. 47 U.S.C. §230(c)(2)(A) (provider is not liable for "any action taken . . . to restrict access to or availability of material that the provider or user considers . . .

Case No.: 5:18-cv-05409-EJD
ORDER GRANTING MOTION TO DISMISS

11

otherwise objectionable"); *see also Zango*, 568 F.3d at 1173 (provider of software or enabling tools that "filter . . . content that the provider or user considers . . . otherwise objectionable may not be held liable for any action taken to make available the technical means to restrict access to that material"). Second, PC Drivers' contention that Malwarebytes "has not actually determined that PC Drivers is "otherwise objectionable" is inconsistent with the allegations in the Complaint. The Complaint alleges that Malwarebytes classified PC Drivers' Driver Support program as a PUP. Compl. ¶¶ 14, 18. The PUP classification is Malwarebytes' determination that Driver Support is "otherwise objectionable."

PC Drivers' reliance on Judge Fisher's concurring opinion in *Zango* is also misplaced because that opinion discusses a concern that is different and unrelated to click advertising theft and actually supports Malwarebytes' position. Judge Fisher expressed concern that extending section 230(c)(2) immunity beyond the facts of the *Zango* case "could pose serious problems if providers of blocking software were to be given free license to *unilaterally* block the dissemination of material by content providers." *Zango*, 568 F.3d at 1178 (Fisher, J., concurring). More specifically, Judge Fisher was concerned that blocking software providers "could employ their software to block content for anticompetitive purposes *without the user's knowledge*." *Id*. at 1179. Judge Fisher described as an example "a web browser configured by its provider to filter third-party search engine results so they would never yield websites critical of the browser company or favorable to its competitors." *Id*. Judge Fisher opined that "it would be an abuse of [section 230(b)(2)] immunity to apply it to" the "covert" anti-competitive blocking activity described above. *Id*. Here, PC Drivers' Complaint does not allege the type of "covert" anti-competitive blocking that concerned Judge Fisher. *Id*. PC Drivers and Malwarebytes are not alleged to be competitors. Nor is the alleged blocking "covert." The Complaint and the attached exhibits show that Malwarebytes' subscribers are notified when Malwarebytes blocks content as a PUP. Malwarebytes also publishes its criteria for identifying PUPs.

As Judge Fisher observed, section 230 is a "broadly worded statute" and provides "generous coverage." *Id*. at 1178-79. The statute's "generous coverage" immunizes

Case No.: 5:18-cv-05409-EJD
ORDER GRANTING MOTION TO DISMISS
12

Malwarebytes' classification of PC Drivers' Products as PUPs and its filtering "actions." Therefore, PC Drivers' claims for violation of Lanham Act § 43(a) (Count I), business disparagement (Count IV) and negligence or gross negligence (Count VI) will be dismissed to the extent these claims are based on Malwarebytes' classification of PC Drivers' Products as PUPs and for the filtering "actions" and ), the claim for tortious interference with contractual relations (Count V) will be dismissed in its entirety.

To the extent Counts I, IV and VI are based upon the allegedly false and disparaging statements in Malwarebytes' online forum post, the applicability of section 230 cannot be determined at the pleading stage as discussed above. Whether PC Drivers has alleged sufficient facts to state a viable claim based upon those alleged misstatements is addressed immediately below.

### B. Whether PC Drivers Pled Sufficient Facts to State Claims for Relief

Malwarebytes contends that even if statutory immunity does not completely shield it from liability, the Complaint should be dismissed for failure to sufficiently plead claims for relief.

#### 1. Lanham Act § 43(a) (Count I) and Business Disparagement (Count IV)

Malwarebytes contends that PC Drivers has not alleged the requisite elements to state claims for violation of Lanham Act §43(a) and business disparagement. Fundamentally, Malwarebytes contends that PC Drivers has not alleged and cannot allege that Malwarebytes made actionable false statements.

To state a claim under Section 43(a) of the Lanham Act, a plaintiff must allege that: (1) the defendant made a false statement of fact in a commercial advertisement, (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience, (3) the statement is material, (4) the defendant caused the statement to "enter interstate commerce," and (5) the plaintiff has been or is likely to be injured as a result of the false statement. *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997). Statements of opinion that are not capable of being proven false do not give rise to civil liability. *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir. 1999) (holding that vague and subjective statement

Case No.: 5:18-cv-05409-EJD
ORDER GRANTING MOTION TO DISMISS
13

that the plaintiff was "too small" to handle certain business did not give rise to liability under Lanham Act or California law of defamation). The elements of a claim for business disparagement are: "(1) the defendant published false and disparaging information about it, (2) with malice, (3) without privilege, (4) that resulted in economic damages to the plaintiff." *Gurrola v. Walgreen Co.*, No. EP-17-CV-00078-DCG, 2017 WL 6764324, at *4 (W.D. Tex. Nov. 15, 2017).

Here, the focus of PC Drivers' section 43(a) and business disparagement claims is Malwarebytes' allegedly false and disparaging statement that Driver Support is a "system optimizer" that "uses intentional false positives to convince users that their systems have problems." Compl. ¶¶ 20-21; PC Drivers' Opp'n. at 15.[5] PC Drivers contends that whether a program is a "system optimizer" is an objectively verifiable statement and actionable, whereas Malwarebytes contends that it is an opinion and non-actionable. It is not evident from the Complaint whether the characterization of a software program as a "system optimizer" is objectively verifiable. Nor does PC Drivers provide a satisfactory explanation of that term in response to Malwarebytes' instant motion and instead asserts in conclusory fashion that "system optimizer" and the other statements in Malwarebytes' online forum post "are specific, measurable, admit [to] empirical verification, and can be proven false by PC Drivers." PC Drivers' Opp'n. at 15. Because PC Drivers has not alleged sufficient facts to establish the falsity of Malwarebytes' "system optimizer" related statements, the section 43(a) and business disparagement claims are subject to dismissal and the court need not address Malwarebytes' remaining legal challenges to

---

[5] These claims are also based upon Malwarebytes' classification of PC Drivers' Products as PUPs. For reasons previously discussed, Malwarebytes is statutorily immune from liability for classifying PC Drivers' Products as PUPs. Malwarebytes' classification of PC Drivers Products as PUPs is also a nonactionable opinion. *See Coastal Abstract Serv., Inc.*, 173 F.3d at 731; *ZL Techs., Inc. v. Gartner, Inc.*, 709 F. Supp. 2d 789, 797 (N.D. Cal. 2010) (analyst's ranking of a software company in an industry report was "non-actionable opinion" because the ranking was based upon unverifiable weighing of criteria and conversations with customers and references), *aff'd sub nom. ZL Techs., Inc. v. Gartner Grp., Inc.*, 433 F. App'x 547 (9th Cir. 2011); *see also Hurlbut v. Gulf Atl. Life Ins. Co.*, 749 S.W.2d 762, 766 (Tex. 1987) ("The plaintiff in a business disparagement claim, however, must plead and prove the falsity of the statement as part of his cause of action.").

Case No.: 5:18-cv-05409-EJD
ORDER GRANTING MOTION TO DISMISS

14

1 these claims.

2                     2. Trademark Dilution (Count II)

PC Drivers acknowledges that its trademark dilution claim cannot be maintained because its Marks are not sufficiently "famous" as that term is construed by the Ninth Circuit. *See e.g.*, *Pinterest, Inc. v. Pintrips, Inc.*, 140 F. Supp. 3d 997, 1032-33 (N.D. Cal. 2015). The trademark dilution claim shall be dismissed.

                    3. Trademark Infringement (Count III)

Malwarebytes contends that the trademark infringement claim should be dismissed because the Complaint fails to plausibly allege that Internet users are confused by Malwarebytes' use of PC Drivers' Marks and that Malwarebytes' use is "nominative."

"A successful trademark infringement claim under the Lanham Act requires a showing that the claimant holds a protectable mark, and that the alleged infringer's imitating mark is similar enough to 'cause confusion, or to cause mistake, or to deceive.'" *Surfvivor Media, Inc. v. Survivor Productions*, 406 F.3d 625, 630 (9th Cir. 2005) (quoting *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 111 (2004)). "The test for likelihood of confusion is whether a 'reasonably prudent consumer' in the marketplace is likely to be confused as to the origin of the good or service bearing one of the marks." *Dreamwerks Production Group, Inc. v. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir. 1998).

Trademark law recognizes a "fair use" defense to infringement where the alleged infringer uses a mark only to describe the goods or services of a party or their geographic origin. *New Kids on the Block v. News Am. Pub., Inc*., 971 F.2d 302, 306 (9th Cir. 1992). "[N]ominative use of a mark—where the only word reasonably available to describe a particular thing is pressed into service—" is a fair use "because it does not imply sponsorship or endorsement by the trademark holder." *New Kids on the Block*, 971 F.2d at 308. Use of another's mark is nominative and non-infringing when (1) "the product or service in question must be one not readily identifiable without use of the trademark," (2) "only so much of the mark or marks [are] used as is reasonably necessary to identify the product or service," and (3) the use does "nothing that would, in

Case No.: 5:18-cv-05409-EJD
ORDER GRANTING MOTION TO DISMISS
15

conjunction with the mark, suggest sponsorship or endorsement by the trademark holder." *Id.*

Here, PC Drivers' claim does not resemble a typical trademark infringement claim in which a trademark holder alleges that use of its mark or a similar mark is causing confusion as to sponsorship or endorsement. Instead, PC Drivers contends that Malwarebytes' use of the Marks is causing confusion by "deceiv[ing] the public into believing PC Drivers' website and [P]roducts are malicious, and that Malwarebytes' premium product is the solution to resolve any future 'malicious' programs." PC Drivers' Opp'n. at 19. The cases PC Drivers relies on, however, do not support PC Drivers' novel theory of trademark infringement. In *Surfvivor Media*, the plaintiff alleged infringement of the mark "Surfvivor" by defendant's use of the mark "Survivor." *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d at 625. The court applied the "*Sleekcraft* factors" and held that there was no likelihood of confusion between the use of "Surfvivor" for "Hawaiian beach-themed products" and use of "Survivor" for reality TV show about "extreme outdoor conditions." *Id.* at 628-635. Like *Surfvivor Media*, the remaining cases PC Drivers relies upon analyze whether use of similar marks is likely to cause confusion. *See Interstellar Starship Servs., Ltd. v. Epix Inc.*, 184 F.3d 1107, 1108 (9th Cir. 1999) (applying *Sleekcraft* factors to determine whether use of "Epix" for video imaging products and services and use of "epix.com" for graphic design services created a likelihood of confusion); *Res. Lenders, Inc. v. Source Sols., Inc.*, 404 F. Supp. 2d 1232, 1236 (E.D. Cal. 2005) (holding that use of marks containing "Resource" by a mortgage loan provider and use of marks containing "RESource" by a real estate sales and mortgage company were likely to cause confusion); and *Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1397, 1403 (9th Cir. 1997) (considering "likelihood of confusion in the market place as to the source of" "The Cat NOT in the Hat!," a satire regarding the O.J. Simpson trial, where the writer admitted that "portions of his book derive from [Dr. Seuss'] The Cat in the Hat . . . to conjure up the original"). PC Drivers' trademark infringement claim in this case is not based upon alleged use of a confusingly similar mark, and is therefore distinguishable.

Furthermore, the face of the Complaint and screenshots of Malwarebytes' software

Case No.: 5:18-cv-05409-EJD
ORDER GRANTING MOTION TO DISMISS
16

notifications establish the three requirements for the fair use defense. The screenshot shows that Malwarebytes uses "download.driversupport.com." and "www.driversupport.com." Dkt. Nos. 61-5, 61-6. In each instance, it is evident that Malwarebytes is informing the user of the program that is being blocked. PC Drivers does not explain how its products or services may be readily identifiable without use of the domain names. The first requirement is therefore satisfied. *See New Kids on the Block*, 971 F.2d at 308. Each screenshot shows that Malwarebytes refers to each PC Drivers domain name only once, which satisfies the second requirement that "only so much of the mark [ ] may be used as is reasonably necessary to identify the product or service." *Id.* Third, the use of the domain names described above does not suggest sponsorship or endorsement by the trademark holder. *Id.* To the contrary, Malwarebytes' description of PC Drivers' Products as PUPs implies disapproval. PC Drivers contends that Malwarebytes' use of PC Drivers' Marks is not nominative because Malwarebytes is using the Marks to "redirect[ ] consumers clicking on paid PC Drivers' advertisements to landing pages where false and misleading statements of fact are made in conjunction with an offer to purchase Malwarebytes' premium products." PC Drivers' Opp'n. at 20. This alleged redirection does not negate any of the requirements of the fair use defense.

Because PC Drivers' Complaint fails to allege actual confusion and shows that Malwarebytes' use of the Marks is nominative and non-infringing, the claim for trademark infringement will be dismissed.

### 4. Negligence and Gross Negligence (Count VI)

PC Drivers' negligence and gross negligence claims are premised on Malwarebytes' alleged theft of click advertising services and the allegedly false and disparaging "false positives" statement. PC Drivers' Opp'n. at 17. Malwarebytes contends that the claim must be dismissed because PC Drivers fails to allege facts giving rise to a legal duty.

To state a negligence claim, PC Drivers must plead that (1) Malwarebytes owed it a duty; (2) Malwarebytes breached its duty; (3) Malwarebytes' breach proximately caused PC Drivers injuries and (4) damages resulted from the breach. *See Mission Petroleum Carriers, Inc. v.*

Case No.: 5:18-cv-05409-EJD
ORDER GRANTING MOTION TO DISMISS
17

*Solomon*, 106 S.W.3d 705, 710 (Tex. 2003). Gross negligence additionally requires that "(1) viewed objectively from the standpoint of the actor, the act or omission must involve an extreme degree of risk, considering the probability and magnitude of the potential harm to others, and (2) the actor must have actual, subjective awareness of the risk involved, but nevertheless proceed with conscious indifference to the rights, safety, or welfare of others." *Barragan v. Gen. Motors LLC*, No. 4:14-cv-93, 2015 WL 5734842, at *12 (W.D. Tex. Sept. 30, 2015) (quoting *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 314 (5th Cir. 2002)). "The existence of a duty is a question of law." *Mission Petroleum Carriers*, 106 S.W.3d at 710. "When considering whether there is a basis for imposing a duty, [Texas state courts] consider various factors, "including the risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant." *Id*.

PC Drivers makes no attempt to address the factors listed above and instead relies entirely on two cases involving physical injuries. In *EDCO Prod., Inc. v. Hernandez*, 794 S.W.2d 69, 74 (Tex. App.—San Antonio, writ denied), the court recognized an oil tank operator's duty to warn a worker of hidden dangers and upheld a jury verdict in favor of the injured worker. In *El Chico Corp. v. Poole*, 732 S.W.2d 306, 311 (Tex. 1987), the court held that an alcoholic beverage licensee has a duty to discontinue serving alcohol to a patron who the licensee knows or should know is intoxicated. These two cases are thus clearly distinguishable and do not support PC Drivers' negligence and gross negligence claims in the present case. under the facts of this case. The negligence and gross negligence claims will be dismissed.

5. Common Law Unfair Competition (Count VII)

Under Texas law, unfair competition is an "umbrella" for all claims arising out of business conduct that is "contrary to honest practice" in commercial matters. *Taylor Pub. Co. v. Jostens, Inc.*, 216 F.3d 465, 486 (5th Cir. 2000) (citations omitted). It is not an independent cause of action and instead requires the plaintiff to establish an "illegal act" that "must at least be an independent tort" that "interfered with the plaintiff's ability to conduct its business." *Id.* As discussed

Case No.: 5:18-cv-05409-EJD
ORDER GRANTING MOTION TO DISMISS
18

previously, PC Drivers has not sufficiently pled any of its common law tort claims or Lanham Act claims. Therefore, PC Drivers' unfair competition claim will be dismissed.

### 6. Promissory Estoppel (Count VIII)

Malwarebytes contends that PC Drivers has not alleged a specific and definite promise to support a claim for promissory estoppel. "A cause of action for promissory estoppel requires: (1) a promise by the defendant; (2) foreseeable and actual reliance on the promise by the plaintiff to his detriment; and (3) that enforcement of the promise be necessary to avoid an injustice." *Guajardo v. JP Morgan Chase Bank, N.A.*, 605 F. App'x 240, 248 (5th Cir. 2015); *see also English v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983). "[T]he asserted promise must be sufficiently specific and definite that it would be reasonable and justified for the promisee to rely upon it as a commitment to future action." *Guajardo*, 605 F. App'x at 248.

Here, PC Drivers alleges that Malwarebytes "proffered that if AppEsteem gave its approval seal to PC Drivers' software, then Malwarebytes would reconsider delisting that software as PUPs." Compl. ¶ 16. This alleged promise is too indefinite to be actionable. Malwarebytes agreed to "reconsider" its decision to classify PC Drivers' Products as PUPs. That PC Drivers may have understood Malwarebytes' representation as a commitment to de-list the Products as PUPs (Compl. ¶ 69) does not make it so. Malwarebytes' proffer to reconsider is no more definitive than "promises to negotiate" which courts have found insufficient as a matter of law. *Stolts v. Wells Fargo Bank, NA*, 31 F. Supp. 3d , 876, 881 n.4 (S.D. Tex. 2014) (statement that modification of plaintiff's loan was "under consideration" was too indefinite to establish promissory estoppel claim). The promissory estoppel claim will be dismissed.

### 7. PC Drivers' Request for Leave to Add a Claim

PC Drivers requests leave to amend the Complaint to add a claim under the Texas Theft Liability Act ("TTLA") which provides in pertinent part that a person commits "theft of service" when: "having control over the disposition of services of another to which the actor is not entitled, the actor intentionally or knowingly diverts the other's services to the actor's own benefit or to the benefit of another not entitled to the services." Tex. Penal Code § 31.04(a). This proposed claim,

however, is predicated on the same allegations of click advertising theft underlying claims that the court has found fall within the CDA's "generous coverage" of immunity. The proposed new claim would be futile and accordingly PC Drivers' request for leave to amend will be denied. *See Sikhs for Justice, Inc. v. Facebook, Inc.*, 697 F. App'x 526 (9th Cir. 2017) (affirming dismissal with prejudice where the claim was "barred by the CDA" and amendment was therefore "futile").

## V. CONCLUSION

For the reasons set forth above, Malwarebytes' motion to dismiss is GRANTED as to Count I for violation of Lanham Act § 43(a) to the extent it is based upon Malwarebytes' classification of PC Drivers' product as a PUP; Count II for trademark dilution; Count III for trademark infringement; Count IV for business disparagement to the extent it is based upon Malwarebytes' classification of PC Drivers' product as a PUP; Count V for tortious interference with contractual relations; Count VI for negligence and gross negligence; Count VII for common law unfair competition; Count VIII for promissory estoppel; and Count IX for "declaratory judgment" that all of the Products are not PUPs. These claims are DISMISSED without leave to amend.

Count I for violation of Lanham Act § 43(a), Count IV for business disparagement and Count X for attorneys' fees pursuant to Texas Civil Practice and Remedies Code and 28 U.S.C. section 2202 are DISMISSED with leave to amend.

PC Drivers' request for leave to amend the Complaint to add a claim under the Texas Theft Liability Act is DENIED.

PC Drivers may file and serve an amended complaint consistent with this Order no later than March 27, 2019.

**IT IS SO ORDERED.**

Dated: March 6, 2019

EDWARD J. DAVILA
United States District Judge

Case No.: 5:18-cv-05409-EJD
ORDER GRANTING MOTION TO DISMISS
20